### ORDER

**In re C. R.**

*Frank Krizner,* for petitioner.
*James Taylor,* for respondent.

HOUSE, P. J. (Thirty-third Judicial District, Specially Presiding), July 25, 1973.—A petition for involuntary termination of parental rights was filed by Butler County Bureau of Childrens Services seeking to terminate the parental rights of M. R. as to her daughter, C. R. Counsel was appointed by the court to represent respondent and the matter proceeded to hearing. The petition alleges as grounds for termination the continued incapacity of respondent and the unlikelihood that this incapacity could or would be remedied.

## ISSUES

Has it been shown that respondent has lacked in the past and now lacks the capacity to provide essential parental care, control or subsistence necessary for the physical or mental well-being of her daughter and, if so, has it been shown that the condition and causes of her incapacity cannot or will not be remedied by respondent?

## FINDINGS OF FACT

1. C. R. is a minor female of the age of 15 years.
2. C. R. has been under the care and supervision of the Butler County Bureau of Childrens Services for a period of approximately eights years, during which time she has been cared for in a home for children and in foster homes.
3. Respondent, M. R., is an adult individual of the age of 51 years and is the mother of C. R.
4. Respondent is a high school graduate who had gainful employment for approximately 13 years after graduation from high school and until her marriage and/or until the onset of mental illness.
5. Respondent was first hospitalized and treated for

mental illness in 1950 or 1951, the inference being that she received electric shock treatment at that time.

6. Respondent has been hospitalized and treated for mental illness at Torrance State Hospital on four different admissions and for varying lengths of time, the first such admission being in 1954 and the last such admission being in 1968.

7. Respondent was placed in out-patient care by Torrance State Hospital at the time of her release from the hospital in 1969 and has been under such out-patient care at the hospital and at the Indiana Guidance Clinic continuously since her hospital release.

8. A final diagnosis at Torrance State Hospital found that respondent was suffering from schizophrenia, chronic undifferentiated type with possible paranoid trends.

9. Since leaving Torrance State Hospital in 1969, respondent has been under the care, first, of William T. Kitski, M.D., and, more recently since early 1972, of R. R. McLeod, M.D., a psychiatrist.

10. Dr. McLeod has diagnosed respondent's present condition as of the date of his last examination on February 14, 1973, as chronic paranoid schizophrenia.

11. Dr. McLeod is of the opinion that the prognosis in respondent's case is "now poor"; that is, that she is not likely to become asymptomatic after "she has shown the symptoms for nineteen years"; the chance of abatement of her condition is one in 10.

12. Dr. McLeod is of the opinion that respondent is capable of maintaining herself in the community but that her condition is such as to adversely affect her parental relationship with her daughter and that the prognosis is poor as to an abatement of this incapacity.

13. Respondent has evidenced a continuous interest and concern for her daughter during the entire period that the child has been in foster care.

14. Respondent presents herself before the court as an adult; apparently physically healthy and physically normal.

15. Respondent, in testifying, exhibited an apparently normal capacity to recall past events in proper sequence but lapsed repeatedly and unpredictably into unrealistic and unintelligible explanations and interpretations of those events, as for instance:

(a) Respondent states that in 1951 at St. Francis Hospital, she underwent "electrocution" where "they took the life out of my body" except "what went in the power lines was returned to the body" and that all of this is the basis for her "disability claim." She describes her disability as "refraction annually" and says that this is interpreted to mean "life out—will return." Respondent says the effect of all of this is that she has not matured since 1951 because "without your life you don't mature like you should."

(b) Respondent states that she is unable to properly explain her situation because "that is all sealed information with the government."

(c) Respondent states that two other children were removed from her custody and placed in a children's home some 15 years or more ago "by the United States Jury." "They came to the Court in Indiana with the sealed Court Orders. That's sealed information."

16. Respondent suffers from a chronic mental illness of at least 20 years duration which renders her incapable of relating normally to the world around her or to any person in contact with her.

17. Respondent lacks the capacity to provide essential parental care, control and subsistence necessary for the physical or mental well-being of her child.

18. The conditions and causes of the parental incapacity suffered by respondent cannot or will not be remedied by her.

19. The best interests of the public and of the child

will be served by a termination of the parental rights of respondent.

## DISCUSSION

The legislature has provided that the rights of a parent in regard to a child may be terminated after a petition filed and a hearing held on the ground that, inter alia: "(2) The repeated and continued incapacity . . . of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity . . . cannot or will not be remedied by the parent": Act of July 21, 1970, P. L. 620, art. III, sec. 311, 1 PS §311.

In the case at bar, such a petition has been filed, hearing held and evidence received on the question of respondent's incapacity to function as a parent and upon the question of her ability to remedy her alleged parental incapacity.

There is a certain paucity of appellate decisions to guide us in determining whether the quality and quantity of petitioner's evidence is sufficient to establish the fact of respondent's incapacity and the fact of her inability to remedy that alleged incapacity. It is to be noted that respondent presented no evidence but did testify in the petitioner's case as on cross-examination.

Our case deals with an alleged mental and emotional incapacity rather than an alleged physical incapacity. We are aware that the field of psychiatry is neither so exact nor so far advanced as the field of physical medicine. Therefore, we approach with considerable caution the diagnoses and prognoses profferred by those in the psychiatric field. The fact remains, however, that in a case where mental or emotional incapacity is alleged, the court necessarily must rely heavily upon the evidence of psychiatric experts.

In the case at bar, Dr. McLeod testified that respond-

ent has been under his care since early 1972 and that he has available to him histories, records of treatment and other materials relating to respondent which cover the past 20 years or more. He testified as to diagnoses previously made by others but he also testified as to his own diagnosis and prognosis in respondent's case based upon his own observation and examination. He concluded that respondent now suffers from chronic paranoid schizophrenia and that, given her past history and present condition, she has but one chance in 10 of recovery. He further concludes that the nature of her condition is such as to render respondent incapable of developing and maintaining a proper parental relationship with her 15-year-old daughter.

We are of the opinion that Dr. McLeod's evidence, together with the other evidence relating to respondent's past actions and conduct and together, also, with respondent's own appearance and testimony, is sufficient to support an order terminating respondent's parental rights.

In Jones Appeal, 449 Pa. 543 (1972), the court was confronted with a situation where the medical witness did not appear personally. Instead, a written statement as to respondent's mental condition and prognosis was submitted to the trial court and was relied upon as the basis for an order terminating parental rights. In reversing the termination order, the appellate court made this observation at page 551:

"Dr. Patterson's statement is illuminating. It represents precisely the quality of evidence substantively necessary to support a finding of continued and irremedial [sic] parental incapacity—the quality of evidence capable of sustaining an order of involuntary termination of parental rights under the 1970 Adoption Act."

Dr. McLeod's evidence in our case is of essentially

the same quality and import as the statement of Dr. Patterson which was approved by the Supreme Court in Jones Appeal, supra. Nevertheless, we would be reluctant to base a termination order on the evidence of the psychiatrist standing alone and we do not do so. There is ample independent evidence from which to conclude that respondent's mental incapacity has been of quite long duration, that it has been continuous and that it existed on the occasion of her appearance and testimony at hearing.

This court is mindful of the extraordinary nature of the power to terminate parental rights. That power must be used sparingly and with the greatest of caution and then only in cases where the evidence is quite clear and convincing. This is such a case.

It must be noted that the child involved in this case is a female child of the age of 15 years who has been cared for and maintained in foster homes for approximately half of her lifetime. While there has been considerable visitation with the mother during the years of foster care, it is apparent that the child has not been exposed to her mother's more bizarre attitudes and convictions. It is not reasonable to assume that a child of this age could cope successfully with such a situation if she were thrust into it.

Likewise, at the age of 15 years, this child is entering the most tumultuous and unsettling period of her existence. As with any child of this age, she needs all of the understanding and perceptive emotional support that she can get. In this case, the parent is presently incapable of providing these essentials and there is no foreseeable end to that incapacity.

While it is not the gravamen of this proceeding, we are constrained to observe that the interests of the child outweigh the interests of the parent and compel us to terminate the parental relationship.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter.

2. The evidence is sufficient to establish that the repeated and continued incapacity of respondent has caused the child, C. R., to be without essential parental care, control and subsistence necessary for her physical and mental well-being and that the conditions and causes of the incapacity cannot or will not be remedied by respondent.

3. Petitioner is entitled to the entry of an order terminating the parental rights of respondent in the child, C. R.

## ORDER OF COURT

And now, July 25, 1973, after hearing, and in accordance with the findings of fact, conclusions of law and discussion contained in the attached opinion, it is ordered, adjudged and decreed that the parental rights of respondent, M. R., in regard to the child, C. R., be and are hereby terminated.

Costs of the proceeding shall be paid by petitioner.